IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INDIANAPOLIS DOWNS, LLC, *et al.*,[1] | Case No. 11-_____ ( ) |
| Debtors. | (Joint Administration Requested) |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF FD U.S. COMMUNICATIONS, INC. AS CORPORATE COMMUNICATIONS CONSULTANT TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") submit this application (the "**Application**") pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") for the entry of an order in the form attached hereto (the "**Order**"), authorizing the retention and employment of FD U.S. Communications, Inc. ("**FD Communications**") as corporate communications consultant to the Debtors, effective *nunc pro tunc* to the Petition Date (as defined below), on the terms set forth below. The Debtors support the Application with the Declaration of Mark McCall (the "**McCall Declaration**"), which is attached hereto as **Exhibit "A"**. In support of the Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are Indianapolis Downs, LLC (5457) and Indiana Downs Capital Corp. (3803). The Debtors' address is 4300 N. Michigan Road, Shelbyville, IN 46176.

## Status of the Case and Jurisdiction

1. On April 7, 2011 (the "**Petition Date**"), the Debtors commenced these cases (the "**Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3. No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not yet been appointed in these Cases.

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. sections 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief sought herein are section 327(a) of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Rules.

## Background

6. The Debtors operate a "racino" at a 283-acre site in Shelbyville, Indiana, located southeast of Indianapolis. In addition, the Debtors operate two satellite wagering facilities in Evansville and Clarksville, Indiana. The Shelbyville racino is comprised of the Indiana Live! Casino (the "**Casino**") and the Indiana Downs racetrack (the "**Track**"), which collectively employ up to approximately 1,100 individuals during normal operations and 1,300 individuals during the racing season. The Casino, opened in 2008, features approximately 2,000 high-tech slot machines and electronic table games including blackjack, roulette, and craps, a poker room, and several branded dining and entertainment options. The Track, opened in December 2002, offers live racing seven months out of the year, a full-card simulcast wagering facility featuring

thoroughbred and harness races from across the country, a full-service restaurant, lounge, arcade, gift shop, facilities for entertaining, and a family entertainment center. The Debtors mainly derive their revenue from pari-mutuel operations, gaming operations, food and beverage sales, and other operations.

7. The Debtors' total revenue for calendar year 2010 was approximately $270 million, representing an 8.7% increase in revenue from 2009. This increase in revenue was driven by, among other things, an increased market share, an increase in the number of slot machines, and one full year of operations at the permanent facility. During the twelve-month period ending in December 2010, the Debtors captured 53% of the Indianapolis market share.

8. A more detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these Cases, is fully set forth in the *Declaration of Gregory F. Rayburn in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

### Relief Requested

9. By this Application, the Debtors respectfully request that this Court enter an order authorizing them to employ and to retain FD Communications as corporate communications consultant effective *nunc pro tunc* to the Petition Date.

### Basis for Relief

10. Section 327(a) of the Bankruptcy Code permits a debtor to employ professionals who do not "hold or represent an interest adverse to the estate," and who are "disinterested persons." *See* 11 U.S.C. § 327(a); *see also In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991). The Bankruptcy Code defines a "disinterested person" to mean one who does not have an

3

interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. *See* 11 U.S.C. § 101(14)(a)(C).

11. Rule 2014(a) of the Bankruptcy Rules requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

*See* FED. R. BANKR. P. 2014(a).

12. FD Communications will render services to the Debtors according to the terms and conditions of the engagement letter by and between FD Communications and the Debtors dated as of March 15, 2011 (the "**Engagement Letter**") as amended by the Order attached hereto, a copy of which is attached hereto as **Exhibit B**. The Debtors retained FD Communications on March 15, 2011 to provide the Debtors with strategic communications services.

13. FD Communications is a corporate communications firm that helps its clients achieve their strategic aims by helping them articulate their strengths and goals at every stage of corporate life. FD Communications' strategic communications services include business to business communications, corporate branding and positioning, corporate reputation management, and strategic media relations. The Debtors have selected FD Communications as their corporate communications consultant based upon, among other things, (a) the Debtors' need to retain a

4

strategic communications consultant, and (b) FD Communications' reputation and extensive experience in providing corporate communications strategies.

### Scope of Employment

14. The Debtors request that FD Communications continue to counsel and assist the Debtors with regard to the Debtors' multiple communications strategies, branding, and reputation as related to the Debtors' restructuring and these chapter 11 Cases.

### Professional Compensation

15. FD Communications intends to apply for post-petition compensation for professional services rendered in connection with these chapter 11 Cases subject to the approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by FD Communications. FD Communications advised the Debtors that the current hourly rates applicable to the professionals proposed to represent the Debtors are:

| Michael Geczi | $600.00 |
| Kyna Legner | $425.00 |
| Kelsi Kennedy | $250.00 |

16. Other FD Communications professionals will render services as needed. As of the date of this Application, FD Communications' current hourly rates for this matter range from $125.00 to $750.00 per hour. The Debtors understand that the hourly rates set forth above are subject to periodic adjustments in the ordinary course of business.

17. The hourly rates set forth above are FD Communications' standard hourly rates for work of this nature. These rates are set at a level designed to compensate fairly FD Communications for its work and to cover fixed and routine overhead expenses. It is FD

5

Communications' policy to charge its clients in all areas of practice for expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, photocopying, travel expenses, certain data retrieval access, analyst reports, industry publications, long distance telephone calls, postage, internet, and other computer services.

18. FD Communications will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to its other clients, subject to this Court's approval of such expenses pursuant to the Bankruptcy Code, such Bankruptcy Rules as may from time to time be applicable, such Local Rules as may from time to time be applicable, and such procedures as may be fixed by order of this Court. FD Communications believes that failure to charge these expenses would require the firm to increase its current hourly rates.

19. FD Communications requested and received an advance retainer in the amount of $115,000.00. This amount has been applied prior to the Petition Date in satisfaction of fees and expenses incurred by FD Communications on behalf of the Debtors.

20. Other than as set forth herein, there is no proposed arrangement to compensate FD Communications. FD Communications has not shared or agreed to share, (a) any compensation it has received or may receive with any other party or person, other than with the employees of FD Communications, or (b) any compensation another person or party has received or may receive.

### Indemnification

21. The Debtors have agreed to indemnify and hold harmless FD Communications from claims, damages, or liability relating to information or services provided by FD Communications to the Debtors. The indemnification, contribution, and reimbursement provisions reflected in the Engagement Letter and as amended by the Order attached hereto are

customary and reasonable terms of consideration for corporate communication consultants such as FD Communications for proceedings both out of court and in chapter 11. The terms of the Engagement Letter were fully negotiated between the Debtors and FD Communications at arm's-length and the Debtors respectfully submits that the Engagement Letter is reasonable and in the best interests of the Debtors, their estates, and creditors.

22. The Debtors shall have no obligation to indemnify FD Communications if it is finally determined by a court or otherwise pursuant to the dispute resolution procedures contained herein that any claim or expense arises from FD Communications' bad faith, self-dealing, breach of fiduciary duty, willful misconduct, or gross negligence.

23. Indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this District and elsewhere. *See e.g.*, *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (PJW) Bankr. D. Del. Oct. 17, 2005); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); *In re United Artists Theatre Co.*, Case No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000); *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 1, 2008); *In re Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007); *In re Worldcom, Inc.*, Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. January 14, 2003); *In re Adelphia Commc'n Corp.*, Case No. 02-41729 (REG) (Bankr. S.D.N.Y. September 27, 2002).

**FD Communications' Disclosure Concerning Conflicts of Interest**

24. FD Communications has informed the Debtors that, as set forth in more detail in the McCall Declaration and subject to any exceptions contained therein or in the schedules thereto, FD Communications does not hold or represent any interest adverse to the Debtors or

7

their estates with respect to the corporate communications work for which FD Communications has been retained. All information with respect to FD Communications' connections with the Debtors, their creditors, any parties in interest, their respective attorneys and accountants, the Debtors, the United States Trustee, or any person employed in the office of the United States Trustee is set forth in the McCall Declaration.

25. FD Communications will conduct continued reviews of its files to ensure that it continues neither to hold, nor to represent any interest adverse to the Debtors or to their estates with respect to the legal work for which FD Communications is to be employed. To the extent any information disclosed herein or in the McCall Declaration requires amendment or modification, upon FD Communications' completion of further review or as additional information becomes available, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

26. The Debtors believe that it is necessary and in the best interest of the Debtors, their estates, and creditors to employ and to retain FD Communications as their corporate communications consultant to render strategic communication services on their behalf.

### Request for Approval of Retention of FD Communications, *Nunc Pro Tunc* to the Petition Date

27. The Debtors request that FD Communications' retention be made effective, *nunc pro tunc* to the Petition Date, to allow FD Communications to be compensated for the work it performs for the Debtors following the Petition Date and prior to the Court's consideration and approval of this Application. With the filing of these Cases, FD Communications will immediately have to turn its attention to urgent matters including, but not limited to, addressing a variety public relations and corporate communications issues, which are related to these chapter 11 Cases. The Debtors submit that, under the circumstances, retroactive approval to the Petition

Date is warranted. *See, e.g., F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

### Notice

28. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to Wells Fargo Bank, N.A., as administrative agent to the Debtors' prepetition secured lenders and post-petition secured lenders; (c) counsel to the *ad hoc* committee of holders of the 11% Senior Secured Notes due 2012; (d) counsel to Fortress Investment Group LLC, as a holder of 15½% Senior Subordinated Secured Pay-In Kind Notes due 2013; (e) counsel to Oliver Racing, LLC, Troon & Co., Anne C. McLure Trust, Jane C. Warriner Trust, J. Oliver Cunningham Trust and Ross J. Mangano; (f) counsel to The Bank of New York Trust Company, N.A., as trustee and collateral agent for the holders of the 11% Senior Secured Notes due 2012; (g) counsel to Wilmington Trust Company, as trustee and collateral agent for holders of the 15½% Senior Subordinated Secured Pay-In Kind Notes due 2013; (h) creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (i) the Office of the United States Attorney General for the District of Delaware; (j) the Internal Revenue Service; and (k) the Securities and Exchange Commission. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

29. No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and that it grant the Debtors such other and further relief as is just and proper.

Dated: April 7, 2011

INDIANAPOLIS DOWNS, LLC and<br>
INDIANA DOWNS CAPITAL CORP.,<br>
Debtors and Debtors-in-Possession<br>
<br>
_____<br>
GREGORY RAYBURN<br>
CHIEF RESTRUCTURING OFFICER