# EXHIBIT A

## SETTLEMENT AGREEMENT

The Settlement Agreement (the "**Settlement Agreement**") is entered into as of July 3, 2012 by and among Indianapolis Downs, LLC ("**Indiana Downs**") on the one hand and Power Plant Entertainment Casino Resorts Indiana, LLC ("**PPE**"), Live!Holdings, LLC ("**Live Holdings**"), and The Cordish Company (collectively, the "**Cordish Entities**") on the other hand. Each of the foregoing persons and entities are sometimes referred to as a "**Party**" and collectively as the "**Parties**."

WHEREAS, Indiana Downs, and the Cordish Entities are parties to the Trademark License Agreement dated January 2008 (the "**Trademark Agreement**") and Indiana Downs and PPE are parties to the Development, Financing and Management Agreement dated September 7, 2007 as amended, (the "**Management Agreement**" and together with the Trademark Agreement, the "**Agreements**");

WHEREAS, Indiana Downs and Indiana Downs Capital Corp., (together with Indiana Downs, the "**Debtors**") commenced chapter 11 bankruptcy proceedings (the "**Proceedings**") on April 7, 2011 (the "**Petition Date**"), jointly administered as Case No. 11-11046 (BLS), in the Bankruptcy Court for District of Delaware (the "**Bankruptcy Court**.");

WHEREAS, on April 7, 2011, the Debtors filed the *Motion of the Debtors for Entry of an Order Authorizing the Debtors to Reject the Development, Financing & Management Agreement Between Power Plant Entertainment Casino Resorts Indiana, LLC and Indianapolis Downs, LLC Nunc Pro Tunc as of the Petition Date* [Docket No. 25] (the "**Rejection Motion**") and the *Motion of the Debtors Pursuant to Bankruptcy to Bankruptcy Code Section 365(a) and Bankruptcy Rule 6006 for an Order Authorizing the Debtors to Assume the Trademark License Agreement* [Docket No. 26] (the "**Assumption Motion**");

WHEREAS, on May 2, 2011, the Cordish Entities filed Proof of Claim number 6 [*See* Docket No. 275] (the "**Cordish Proof of Claim**") asserting a general unsecured claim against Indiana Downs in the amount of $17,039,07.47 plus additional unliquidated amounts related to, among other things, the Agreements and the use of certain intellectual property, which claim the Debtors dispute;

WHEREAS, on May 4, 2011, the Cordish Entities filed the *Omnibus Opposition of Power Plant Entertainment Casino Resorts Indiana LLC and Live Holdings!, LLC to (I) Motion of Debtors to Assume the Trademark License Agreement [D.I. 26], and (II) Motion of the Debtors to Reject the Management Contract [D.I. 25]* [Docket No. 158] (the "**Objection**");

WHEREAS, on November 11, 2011, the Debtors withdrew the Rejection Motion [*See* Docket No. 560] and the Assumption Motion [*See* Docket No. 561];

WHEREAS, the Parties may have additional claims related to the Agreements against one another, including, without limitation, certain claims raised in an arbitration proceeding pending between the Parties on the date of the filing of the Proceedings (the "**Arbitration**");

WHEREAS, on February 13, 2012, the Cordish Entities filed their *Motion to Compel Assumption or Rejection of Trademark License Agreement and Management Contract and to*

*Deem Trademark License Agreement and Management Contract Rejected* [Docket No. 796] (the "**Motion to Compel**"). In the Motion to Compel, the Cordish Entities assert that this Court should deem the Agreements rejected as the Cordish Entities do not consent to the Debtors' assumption of the Agreements;

WHEREAS, on February 13, 2012, the Cordish Entities also filed the *Motion of Power Plant Entertainment Casino Resorts Indiana, LLC and LiveHoldings!, LLC for Allowance and Payment of Administrative Expenses* [Docket No. 795] (the "**Administrative Claim Motion**") seeking no less than $33 million from the estate of Debtor Indiana Downs. Subsequently, on February 23, 2012, the Cordish Entities filed their Request for Payment of Administrative Expense Claim [Docket No. 850] (the "**Administrative Claim Request**");

WHEREAS, on April 18, 2012, the Debtors filed their response to the Motion to Compel seeking to have the Management Agreement deemed rejected nunc pro tunc as of the Petition Date and to have the Trademark Agreement deemed rejected nunc pro tunc as of May 15, 2012 [Docket No. 953], and also filed their objection to the Administrative Claim Motion [Docket No. 954], challenging the administrative expenses sought by the Cordish Entities;

WHEREAS, the Parties have decided that it is in their mutual interest to settle and compromise all claims against one another related to or in connection with the Cordish Proof of Claim and the Agreements, including, without limitation, claims or defenses raised in the Cordish Proof of Claim, the Arbitration, the Motion to Compel, the Administrative Claim Motion and the Administrative Claim Request, on the terms provided for herein.

NOW, THEREFORE, in consideration of the mutual covenants and undertakings contained herein, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.      In consideration of any and all claims and actions (the "**Claims**") by and between the Debtors and the Cordish Entities, including, without limitation, any and all Claims relating to the Agreements, the Cordish Proof of Claim, the Arbitration, the Motion to Compel, the Administrative Claim Motion and the Administrative Claim Request, and in full and final satisfaction and settlement of the Claims:

a.      **Compromise of the Cordish Proof of Claim**. The Cordish Proof of Claim is deemed allowed as a prepetition unsecured non-priority claim in the amount of $12,000,000.00, inclusive of interest, and disallowed for any amount greater than $12,000,000.00. The Cordish Entities will not assert any other claims, either pre-petition or post-petition, including any rejection damages claims or administrative claims, against the Debtors in the Proceedings, other than claims that may arise from this Settlement Agreement. Further, the Cordish Entities agree to (i) not oppose or object to the confirmation of any plan of reorganization proposed by the Debtors that provides that the Cordish Proof of Claim be treated in the same manner as other general unsecured claims and is otherwise consistent with this Settlement Agreement and (ii) not oppose any sale of all or substantially all of the Debtors' assets in connection with the Proceedings.

2

b.   **Payment**.  The Debtors agree to pay $3,500,000.00 (the "**Payment**") to the Cordish Entities.  Within ten (10) business days from the entry of an order approving this Settlement Agreement (the "**First Installment Date**"), the Debtors will pay $2,500,000.00 to the Cordish Entities.  The Debtors will pay $250,000.00 weekly to the Cordish Entities beginning on the first Friday after the First Installment Date and each Friday thereafter until Payment is paid in full.  The Payment will be completed by August 22, 2012 (the "**Effective Date**").  Interest will accrue on any balance after August 27, 2012 at a rate of ten (10) percent per annum.  Upon the Effective Date, the Administrative Claim Motion and the Administrative Claim Request shall be deemed to be withdrawn with prejudice without the need for any further action on the part of the Bankruptcy Court or the Parties.  The Cordish Entities shall also file a notice of withdrawal of the Administrative Claim Motion and the Administrative Claim Request within three (3) business days of the Effective Date.

c.   **Rejection of Management and Trademark Agreements**.  Upon the Effective Date, and without any need for further action on the part of the Bankruptcy Court or the Parties, (i) the Management Agreement shall be deemed to be rejected as of the Petition Date, and (ii) the Trademark Agreement shall be deemed to be rejected as of the date of this Settlement Agreement.  The Motion to Compel shall also be deemed to be withdrawn upon the Effective Date without any need for further action on the part of the Bankruptcy Court or the Parties, and the Cordish Entities shall file a notice of withdrawal of the Motion to Compel within three (3) business days of the Effective Date.  For the avoidance of doubt, except as otherwise provided in this Settlement Agreement, the Cordish Entities shall not assert and shall be deemed to have waived any rejection damages claims or administrative claims relating to the Agreements against the Debtors in the Proceedings as a result of the rejection of the Agreements or otherwise.

d.   **Delivery of Letter.**  The Debtors agree to deliver to the Cordish Entities a mutually agreed upon letter to be used by the Cordish Entities or any of their respective parents or affiliates for the sole purpose of issues pertaining to the casino formerly known Indiana Live!.  Consistent with this paragraph, the letter (a) shall not be used as evidence or for any other purpose in any litigation, including the Baltimore City Litigation (as defined herein), (b) shall not be disclosed by the Cordish Entities to anyone other than in responding to an inquiry with regard to the Cordish Entities' involvement with the casino formerly known as Indiana Live! and (c) shall not be used or disseminated by the Cordish Entities for any purpose other than those set forth herein.

f.   **Dismissal of the Arbitration**.  The Parties agree that upon the entry of a non-appealable order of the Bankruptcy Court approving this Settlement Agreement, the Parties will file a dismissal of the Arbitration in its entirety, with each party bearing its own costs.

g.   **Releases by Cordish Entities**.  On the Effective Date, and upon the full and complete performance of the obligations identified above, the Cordish Entities, on

2244333.2

their own behalf and on behalf of their officers, directors, shareholders, members, employees, divisions, parents, subsidiaries, affiliates, heirs, assigns, beneficiaries, successors, agents, attorneys, and representatives, do hereby fully release, remise and forever discharge (i) the Debtors and their officers, directors, shareholders, members, employees, divisions, parents, subsidiaries, affiliates, heirs, assigns, beneficiaries, successors, agents, attorneys, and representatives and (ii) with respect to the holders of (a) the 11% Senior Secured Notes due 2012 issued by the Debtors and (b) the 15.5% Senior Subordinated Pay-In-Kind Notes due 2013 issued by the Debtors, of and from any and all claims relating to the matters resolved by this Settlement Agreement, whether previously asserted or otherwise, and whether known or unknown, that exist as of the date of this Settlement Agreement. Notwithstanding the foregoing, this Settlement Agreement does not and is not intended to (i) release claims or obligations that may arise under this Settlement Agreement, including the claim asserted by the Cordish Entities against Indiana Downs in the Cordish Proof of Claim, which claim is deemed allowed as a pre-petition unsecured non-priority claim in the amount of $12,000,000.00 pursuant to Section 1(a) of this Settlement Agreement, (ii) release, compromise or affect the rights, claims and defenses asserted in the action filed in the Circuit Court for Baltimore City, Maryland and styled as Power Plant Entertainment Casino Resort Indiana, LLC v. Mangano, et al., Case No. 24-C-11001014, wherever such rights, claims, and defenses are pursued, transferred to, or brought, and regardless of whether the claims, rights, and defenses are maintained in Baltimore City or proceed in another venue (the "**Baltimore City Litigation**") or (iii) release claims the Cordish Entities may have against the Oliver Estate, LLC, Oliver Racing, LLC, Troon & Co., J. Oliver Cunningham Trust, Jane C. Warriner Trust, Anne C. McClure Trust and Ross Mangano. The Cordish Entities also agree that they will not add the Debtors as a party to the Baltimore City Litigation. Nothing contained herein shall be deemed a waiver or release of any rights that the Cordish Entities (or any affiliate thereof) have as a holder of i) 11% Senior Secured Notes due 2012 and ii) 15.5% Senior Subordinated Pay-In-Kind Notes due 2013 issued by the Debtors as more fully described in this paragraph.

h.   **Settlement Agreement Not Evidence**.  None of the Parties to this Settlement Agreement may use this Settlement Agreement, or any action taken or statement made in connection with this Settlement Agreement, as evidence or for any purpose whatsoever in the Baltimore City Litigation, including but not limited to establishing waiver, collateral estoppel or release of claims.

i.   **Releases by Debtors**. On the Effective Date and upon the full and complete performance of the obligations identified above, the Debtors, on their own behalf and on behalf of their officers, directors, shareholders, members, employees, divisions, parents, subsidiaries, affiliates, heirs, assigns, beneficiaries, successors, agents, attorneys, and representatives, do hereby fully release, remise and forever discharge the Cordish Entities and their officers, directors, shareholders, members, employees, divisions, parents, subsidiaries, affiliates, heirs, assigns, beneficiaries, successors, agents, attorneys, and representatives of and from any

and all claims, whether previously asserted or otherwise, and whether known or unknown, that exist as of the date of this Settlement Agreement. Notwithstanding the foregoing, this Settlement Agreement does not and is not intended to (a) (i) release claims or obligations that may arise under this Settlement Agreement; or (ii) release, compromise or affect the rights, claims and defenses asserted in the Baltimore City Litigation or (b) release any claims that are personal claims of Oliver Estate, LLC, Oliver Racing, LLC, Troon & Co., J. Oliver Cunningham Trust, Jane C. Warriner Trust, Anne C. McClure Trust and Ross Mangano.

2.    **Bankruptcy Court Approval**. The parties will use reasonable efforts to obtain Bankruptcy Court approval of this Settlement Agreement and the entry of the orders deeming the Agreements rejected as of the Petition Date at the next Omnibus Hearing, or such other date that the Parties may agree upon. The Parties may, but are not required to, appeal the non-approval of this Settlement Agreement should that occur.

3.    **Miscellaneous**.

    a.    The recitals set forth above are incorporated in this Settlement Agreement as though fully set forth herein.

    b.    The Parties agree that the execution of this Settlement Agreement and/or the performance of any of the covenants or obligations hereunder is in no way an admission of any disputed issue whatsoever, and that the consideration mutually given by the Parties hereunder is given solely to terminate further controversy with respect to all claims the Parties have against one another.

    c.    The Parties represent and warrant that, in entering into this Settlement Agreement, they have relied on their own investigation and on the investigation and advice of their respective attorneys and have not relied on any statement, representation or commitment of any kind made by any other Party, or by the other Parties' representatives, successors, assignees, heirs, officers, directors, shareholders, members, employees, agents, or attorneys.

    d.    The Parties acknowledge that this Settlement Agreement has not been drafted by any one Party or that Party's attorney. The Parties further represent that this Settlement Agreement represents the collaborative drafting efforts of all Parties. Accordingly, none of the Parties will be entitled to have any language contained in this Settlement Agreement construed against the other because of the identity of the drafter.

    e.    The titles and headings in this Settlement Agreement are included only for ease of reference and shall have no substantive effect.

    f.    The Parties agree that this Settlement Agreement, including this provision, may only be modified, amended or changed by a written document executed by each of the Parties to this Settlement Agreement.

    g.    A waiver of any of the terms of this Settlement Agreement, including this provision, shall not be valid unless it is in writing and signed by all Parties. The failure of

a Party to enforce any of the provisions of the Agreement at any time, or to require performance by any other Party of any of the provisions, shall not in any way be construed: (i) as a waiver of such provisions; (ii) to affect the validity of any part of this Settlement Agreement; or (iii) to affect the right of a Party to thereafter enforce each and every provision of the Settlement Agreement. Waiver of any breach of this Settlement Agreement shall not be deemed to be a waiver of any other or subsequent breach of this Settlement Agreement.

h.      In the event any Party moves the court, files suit, or files any proceeding or action to enforce any terms or conditions of this Settlement Agreement, the prevailing Party shall be entitled to recover all costs and attorneys' fees that it incurs in prosecuting or defending that action.

i.      THE PARTIES HEREBY VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS SETTLEMENT AGREEMENT.

j.      This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their legal representatives, heirs, predecessors, successors, assigns, employees, officers, directors, shareholders and members. No Party to this Settlement Agreement shall take any action indirectly (including through an intermediary or as part of a group) that such Party is not permitted by this Settlement Agreement to take directly.

k.      This Settlement Agreement shall be governed by the laws of the State of Delaware, without regard to the choice of law principles of the State of Delaware. The venue for the resolution of any disputes relating to this Settlement Agreement shall be in a court of competent jurisdiction located in New Castle County, Delaware. The Parties hereby consent to the *in personam* jurisdiction over them of any such court. The Bankruptcy Court shall retain jurisdiction to enforce this Settlement Agreement and to hear any matters or disputes arising from or relating to this Settlement Agreement.

l.      If, for any reason, any provision of this Settlement Agreement is determined to be void or invalid, that determination shall not affect the legality or enforceability of the remaining provisions of this Settlement Agreement.

m.      This Settlement Agreement reflects all of the agreements and understandings among the Parties concerning settlement of this matter. There are no prior, other or additional agreements, representations, or warranties among them concerning settlement of this matter. This Settlement Agreement supersedes all previous communications or representations, either oral or written, among the Parties or any of their agents concerning this Settlement Agreement.

n.      This Settlement Agreement may be executed in multiple counterparts, each of which, when so executed and delivered and when accompanied by signature pages that, when taken together, bear the signature of all Parties, shall be considered as having been duly executed by the Parties, shall be considered an original, and shall be

considered as one and the same instrument and agreement. Executed signature pages delivered by telecopier or by an e-mail which contains a portable document format (.pdf) file of an executed signature page shall be binding as original signatures,

   o.  This Settlement Agreement shall become operative and enforceable upon the entry of an order approving this Settlement Agreement by the Bankruptcy Court. Should the Bankruptcy Court deny approval of this Settlement Agreement, this agreement shall immediately become null and void upon entry of an order of such denial. In such an event, each Party retains and reserves all of its rights with respect to all existing matters between them, including but not limited to the Cordish Proof of Claim, the Arbitration, the Administrative Claim Motion and the Administrative Claim Request, and nothing contained herein shall be deemed to be an admission of liability or any disputed issue whatsoever.

**[Signature Pages to Follow]**

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first shown above.

Indianapolis Downs, LLC

Name:
Title:

Power Plant Entertainment Casino Resorts Indiana, LLC

Name:
Title:

Live!Holdings, LLC

Name:
Title:

The Cordish Company

Name:
Title:

8

2236306.4

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first shown above.

Indianapolis Downs, LLC

_____

Name:
Title:

Power Plant Entertainment Casino Resorts Indiana, LLC

_____

Name: Charles F. Jacobs
Title: Authorized Person

Live!Holdings, LLC

_____

Name: Charles F. Jacobs
Title: Authorized Person

The Cordish Company

_____

Name: Charles F. Jacobs
Title: Vice President

2244333.2

8