# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**ID Liquidation One, LLC,** *et al.*<br>　　　　　Debtors. | Chapter 11<br><br>Case No. 11-11046 (BLS)<br><br>(Jointly Administered)<br><br>Related to Docket Nos. 2012 & 2029 |

## MEMORANDUM ORDER[1]

Upon review of the Motion for Reconsideration (the "Motion") [Docket No. 2012] filed by Fortress Credit Opportunities Advisors, LLC, and the Ad Hoc Second Lien Committee (collectively, the "Objectors"), and the Oliver Parties'[2] response to the Motion (the "Response") [Docket No. 2029];[3] and upon due deliberation; the Court hereby FINDS as follows:

1.　On November 5, 2013, the Court issued its Opinion and Order [Docket Nos. 2006, 2007] allowing the administrative expense claims of the Oliver Parties in the amount of $3.04 million, following a two-day trial and the admission of over a hundred exhibits.

2.　On November 18, 2013, the Objectors filed the Motion, seeking reconsideration of the Court's November 5, 2013 Order. The

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408, 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

[2] The Oliver Parties consist of Ross J. Mangano, as the trustee of the Jane C. Warriner Trust dated February 26, 1971; the J. Oliver Cunningham Trust dated February 26, 1971; and the Anne C. McClure Trust dated February 26, 1971; and Troon & Co.

[3] This matter was scheduled for argument on December 16, 2013. Due to the Court's schedule, that hearing was adjourned. Upon review of the Motion and the Response, the Court concludes that oral argument on this Motion is not necessary. Enough of this Court's time has already been spent on disputes between these parties.

Oliver Parties filed their Response on December 9, 2013, objecting to the Motion.

3. In support of reconsideration, the Objectors point to two portions of the Court's Opinion. First, the Objectors argue that the Court's reliance on Mr. Rayburn's compensation level, as probative of an appropriate salary for Mr. Mangano, was misplaced given that Mr. Rayburn (as a crisis manager) was expected to have duties beyond those of Mr. Mangano or a typical CEO. Second, the Objectors contend that the Court misconstrued a portion of Mr. Hardie's expert report regarding equity compensation levels for comparable executives.

## Analysis

4. A motion for reconsideration under Federal Rule of Civil Procedure 59(e) and Federal Rule of Bankruptcy Procedure 9023 "'allow[s] the court to reevaluate the basis of its decision.'" *In re Pitt Penn Holding Co.*, No. 09-11475, 2012 WL 204095 at *2 (Bankr. D. Del. Jan. 24, 2012) (quoting *Keyes v. Nat'l R.R. Passenger Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. 1991)). A motion for reconsideration is generally only granted if "the controlling law has changed since the initial decision was issued, new evidence has become available, or there is a need to correct clear error of law or prevent manifest injustice." *Pitt Penn*, 2012 WL 204095 at *2 (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)). New evidence "'for reconsideration purposes, does not refer to evidence that a party . . . submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available.'" *Blystone v. Horn*, 664 F.3d 397, 415-16 (3d Cir. 2011) (quoting *Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010)). In the present case, the asserted predicate for reconsideration is the third prong, *viz.*, the Court's alleged clear error of law or the need to prevent manifest injustice.

5. As noted above, the Objectors' first argument was that the Court erred in relying on Mr. Rayburn's compensation level as an ap-

propriate or reliable compensation metric for Mr. Mangano. The Court already indicated in its Opinion that it was well aware that CROs may have different responsibilities and compensation levels given the services they provide. Specifically, in the Opinion, the Court stated:

> The Court acknowledges that there is a practical difference between a long-term executive such as Mangano, and a crisis manager such as Rayburn. Experience teaches that a CRO may at times be compensated at a high rate, given the typically short duration and intense pressures and challenges that crisis managers face. Nevertheless, based on the substantial record developed in this proceeding, the Court concludes that the compensation structure that was agreed to by the major stakeholders for Rayburn's proposed service as CEO is the best and most reliable measure of the appropriate value attributable to Mangano's service as CEO.

Opinion at 19-20.

6.  Specifically, the Objectors argue that Mr. Rayburn's compensation was higher because he was expected to negotiate the terms of the reorganization with the major stakeholders. However, Mr. Mangano testified that he was available and willing to negotiate the reorganization but was counseled by the Debtors' professionals to absent himself from direct negotiations with major creditor constituencies. See Opinion at 15. The fact that the Debtors chose not to avail themselves of the full panoply of his services does not mean Mr. Mangano was not entitled to proper compensation as CEO.[4]

7.  The Objectors' second argument was that the Court erroneously discounted Mr. Hardie's expert opinion on the matter of equity

---

[4] Indeed, the Court specifically stated in the Opinion that proposed engagement of Mr. Rayburn did not necessarily lead to the conclusion that Mr. Mangano's services should not be compensable:
> As noted, Rayburn went on to serve as CRO under the same terms. While cognizant of the cumulative effect of Mangano's and Rayburn's compensation, the Court observes that CROs are commonly appointed in large Chapter 11 cases without removing other, highly compensated senior officers.

Opinion at 20, n. 59.

compensation. The Court acknowledges the clarification of Mr. Hardie's testimony. Nevertheless, consistent with the Court's original conclusion, Mr. Hardie's limited industry survey, while probative of a plausible compensation range, provides in the Court's opinion a less reliable predicate for determining the appropriate compensation for the CEO of Indianapolis Downs when compared with the compensation level actually agreed on by the Debtor for a candidate to fill that position.

8.  It is "axiomatic that the trier of fact is not bound to accept expert opinion, even if it is uncontradicted." *Minnesota Mining & Mfg. Co. v. Berwick Indus., Inc.*, 532 F.2d 330, 333 (3d Cir. 1976) (citing *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S. Ct. 724, 88 L. Ed. 967 (1944); *NBO Indus. Treadway Cos., Inc. v. Brunswick Corp.*, 523 F.2d 262 (3d Cir. 1975)). "Questions about credibility and weight of expert opinion testimony are also for the trier of facts since such testimony is ordinarily not conclusive." *Drysdale v. Woerth*, 153 F. Supp. 2d 678, 689 (E.D. Pa. 2001) aff'd, 53 F. App'x 226 (3d Cir. 2002) (citing *Minnesota Mining*, 532 F.2d at 333 (internal citations omitted)). In giving greater weight to the CEO compensation rate negotiated by the Debtors with Mr. Rayburn over the parties' respective expert valuations, the Court was acting within its discretion as the finder of fact.

9.  In sum, the Court has carefully reviewed the pleadings and the substantial record from the trial in this matter. The Objectors have failed to carry their burden to demonstrate that reconsideration of the November 5, 2013 Order is warranted or appropriate.

Accordingly, for the reasons stated above, it is hereby **ORDERED** that the Motion is **DENIED**.

**BY THE COURT:**

Dated: December 19, 2013
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge